## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| Oldlaw Corporation, formerly known as Laidlaw Corporation, an Illinois Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  07-1070 |
| Timothy D. Allen, | ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This case is before the Court for a Report and Recommendation on Defendant's motion to dismiss or transfer this case to Arizona based on a venue selection clause.[1]  (d/e 4).  For the reasons below, the Court recommends that the motion be granted in part and that this case be transferred to the United States District Court for the District of Arizona, Phoenix Division.

---

[1]Defendant also moves to dismiss for lack of personal jurisdiction, but the Court need not address that argument in light of this recommendation.

## Standard

The Seventh Circuit has recognized that "[a] lack of venue challenge, based upon a forum-selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss." Continental Insurance Co. v. M/V Orsula, 354 F.3d 603, 606-07 (7th Cir. 2003); Muzumdar v. Wellness International Network, Ltd., 438 F.3d 759, 760 (7th Cir. 2006); *see also* Kochert v. Adagen Medical International, Inc., — F.3d —, 2007 WL 1839278 (7th Cir. 2007). The cases just cited were all originally filed in federal district court, not removed from state court like this case. However, Plaintiff does not dispute the application of 12(b)(3) in a removed action, and courts have entertained such motions. *See, e.g.,* Polar Mfg. Corp. v. Michael Weinig, Inc., 994 F.Supp. 1012 (E.D.Wis.,1998) (considering 12(b)(3) and 12(b)(2) dismissal of removed action, but finding lack of personal jurisdiction and opting for transfer pursuant to § 1406(a)); Junction Solutions, LLC v. MBS DEV, Inc., 2007 WL 114306 (N.D.Ill. 2007)(considering and ultimately denying 12(b)(3) motion to dismiss for improper venue on removed case)(not reported). Accordingly, the Court accepts Defendant's contention that a 12(b)(3) motion to dismiss is an appropriate option here. In analyzing the motion, the Court accepts Plaintiff's allegations as true,

drawing all reasonable inferences in Plaintiff's favor.  See <u>AGA Shareholders, Inc. V. CSK Auto, Inc.</u>, 467 F.Supp.2d 834, 842-43 (N.D. Ill. 2006).

## Background

This background is pieced together from the Complaint, its attachments, and Plaintiff's response to the motion to dismiss with its attachments.  Plaintiff's factual assertions in these documents are set forth as true for purposes of this recommendation.

Plaintiff, Oldlaw Corporation, is a corporation organized under Illinois law.  (Complaint ¶ 2).  Plaintiff was formerly known as Laidlaw Corporation ("Laidlaw") and was in the business of manufacturing dry cleaning products.  (Boykin Aff. ¶ 4, attached to Plaintiff's Response, d/e 7).[2]  Metropolis, Illinois, is Plaintiff's principal place of business.  (Notice of Removal ¶ 5).  "Until recently, Laidlaw employed over 200 employees, and had manufacturing plants located in Illinois, Wisconsin, Arizona, New Jersey, Mexico and Canada."  (Boykin Aff. ¶ 4).  Defendant Allen ("Allen") is a former employee, president and director of Plaintiff.  (Complaint ¶ 4).

On or about May 12, 2005, Plaintiff (then Laidlaw Corporation) and

---

[2]Arthur L. Boykin is the current President of Plaintiff.  (Boykin Aff. Para. 2).  Plaintiff submitted Boykin's affidavit with its response to the motion to dismiss.  (d/e 7).

Allen entered into an employment agreement whereby Allen, in return for $139, 400.00, promised to remain with Plaintiff until and unless certain specified events occurred. (Complaint ¶ 5). That agreement also provided that Allen would repay the money if he left for any other reason than those specified. This agreement is not attached to the Complaint and is not material to the Court's analysis.

On or about September 27, 2005, Plaintiff and Allen signed a deferred compensation agreement (the "Agreement").[3] (Complaint ¶ 6). The Agreement was intended to provide "immediate and deferred financial incentives to . . . [Allen], a 'key employee', . . . in part, in the form of constructive ownership of Laidlaw Shares, measured by the increase, if any, of the value of Laidlaw Shares in excess of inflation." (Agreement p.1, § I (C)). The Agreement was intended to prevent dilution of Allen's "phantom shares" based in part on changes in the law since the predecessor agreement. (Agreement pp. 1-2, §§ B, E).

The Agreement states that "[t]he laws of the State of Arizona shall govern the validity, interpretation and administration of this Agreement."

---

[3] The Complaint references the Agreement as attached to the Complaint, but the Agreement was apparently not filed with the Notice of Removal. However, both parties have since submitted a copy of the Agreement. (d/e 10, Ex. 1; d/e 6, Ex. A).

(Agreement p. 13, § II, 7.4). The Agreement also contains a section titled "Venue," which provides:

> As a substantial portion of the duties and obligation of the Parties created hereunder are performable in Scottsdale, Arizona, Scottsdale, Arizona, shall be the sole and exclusive venue for any arbitration, litigation, special proceedings, or other proceedings as between the Parties that may be brought, or arise out of, or in connection with or by reason of this Agreement. (Agreement, p. 14, § II, 7.9).

In late 2005 and early 2006, Allen, in his capacity as Laidlaw's President and employee, negotiated the sale of certain of Laidlaw's assets to Laidlaw Acquisition Company LLC. (Complaint ¶ 7)("LAC"). The multi-million dollar transaction closed on April 30, 2006, and included the sale or lease of many of Plaintiff's Illinois assets. Shortly after the transaction, Laidlaw's Illinois plant was closed. (Boykin Aff. ¶ 9).

In violation of his obligations to Plaintiff, Allen negotiated an agreement between himself and LAC to become its President and Chief Operating Officer, apparently at the same time Allen was duty-bound to advocate and protect Plaintiff's best interests in negotiating the sale of Plaintiff's assets. (Complaint ¶ 10).

In June, 2006, Plaintiff and Allen agreed to terminate the deferred compensation agreement, effective May 31, 2006. (Complaint ¶ 18; d/e

10, Ex. 2). As to termination, the Agreement provides:

> . . . Except as otherwise specifically provided to the contrary, upon the termination of this Agreement, neither Party shall have any further obligation to the other except for any obligation accruing prior to the date of termination, and any obligation, promise or covenant expressly made to extend beyond the termination of this Agreement. (Agreement, p. 3, § II, 2).

In August, 2006, Allen resigned as a director of Plaintiff (Complaint ¶ 19).

On February 20, 2007, Plaintiff filed suit in Peoria County Circuit Court against Allen, alleging breach of contract and fiduciary duty. (Complaint, Counts I & II). Plaintiff alleges that Allen "did not devote his best attention and best abilities exclusively to the service of Plaintiff," failed to "take action on behalf of Plaintiff . . . regarding matters that could have substantially benefited [sic] Plaintiff, including matters that could have benefited [sic] Plaintiff at the cost and expense of LAC," and performed services for compensation other than on Plaintiff's behalf. (Complaint ¶¶ 12-14). Plaintiff alleges Allen thereby breached the deferred compensation agreement[4] and breached his fiduciary duties of "loyalty, candor, care and

---

[4]Section II, 1.2 of the Agreement states "[t]he Employee agrees to devote the Employee's attention and best abilities exclusively to the service of the Corporation in respect of the Business and shall refrain from performing services for financial compensation in respect of the Business during the term of this Agreement other than on behalf of the Corporation.

good faith." (Complaint ¶ 15). Plaintiff also pursues a declaratory judgment that no amounts are owed to Allen under the Agreement. (Complaint, Count III).

Defendant removed the case to federal court on March 23, 2007, and filed its motion to dismiss for improper venue on May 1, 2007.

## Analysis

**I.   The venue selection clause is valid, enforceable and applies to Plaintiff's claims**

It is not clear whether federal or state law determines the validity and enforceability of the venue selection clause in face of a motion to dismiss. The Seventh Circuit has not yet settled "'whether state or federal law applies in a dispute over a forum selection clause when the case is dismissed rather than transferred pursuant to 28 U.S.C. § 1404(a)."[5] Kochert, — F.3d —, 2007 WL 1839278 *2 (7th Cir. 2007), *quoting* Muzumdar, 438 F.3d at 761 n. 2 (7th Cir. 2006).

Defendant has covered all the bases, asserting that the clause is valid and enforceable under both state and federal law, whether one looks to the Seventh Circuit, Ninth Circuit, Illinois or Arizona. Plaintiff does not

---

[5]Defendant does not move to transfer under 1404(a), but the Court believes such a transfer would be appropriate, as discussed *infra*.

address choice of law, instead arguing that the Agreement specifically provides that the venue clause did not survive termination of the contract in June 2006 and therefore does not apply. Plaintiff also argues that no court exists in Scottsdale, Arizona, to resolve the case, rendering the clause unenforceable.

The Court will apply federal and Illinois law, because "'[w]here the parties have not identified a conflict in state law, we will generally apply the law of the forum state.'" Kochert, 2007 WL 1839278 * 2. Plaintiff does not dispute Defendant's contentions regarding Arizona law, nor does Plaintiff set forth Arizona law regarding forum selection clauses. *See footnote 7, infra.*

Absent a compelling reason such as fraud, undue influence or unconscionably skewed bargaining power, forum selection clauses " . . . should be honored by the parties and enforced by the courts." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972); Muzumdar, 438 F.3d at 761 (7th Cir. 2006)("under either federal or Illinois law, forum selection clauses are valid and enforceable"). The clauses are interpreted and enforced like any other contractual provision. IFC Credit Corporation v. Aliano Brothers General Contractors, Inc., 437 F.3d 606, 610 (7th Cir.

2006)(under federal law, a forum selection clause is treated "like any other contractual provision and hence . . . enforce[d] . . . unless it is subject to any of the sorts of infirmity, such as fraud and mistake, that justify a court's refusing to enforce a contract."). Like other contract clauses, a forum selection clause will not be enforced if it "contravene[s] a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." M/S Bremen, 407 U.S. at 15. Nor will a forum clause be enforced if it effectively deprives a party of his day in court. Id. at 18. Illinois law is "materially the same" as federal, except that Illinois is "more lenient toward the defendant . . . where there is a significant inequality of size or commercial sophistication between the parties . . ." IFC Credit Corp., 437 F.3d at 611. Inequality of bargaining power is not a factor here, nor does Plaintiff assert fraud, undue influence, or other like infirmity in the making of the Agreement.

   Plaintiff advances two reasons why the venue clause does not apply. First, Plaintiff contends that its obligation under the venue clause did not accrue before the Agreement's termination, and thus the venue clause does not apply by the Agreement's own terms. Plaintiff argues that it is "clear Allen accrued no right to enforce the forum selection clause with

respect to actions filed after the Agreement's termination because a cause of action to enforce a contractual provision generally does not accrue until the provision is breached. . . . [citations omitted]. Laidlaw could not even arguably breach the forum selection clause before the Agreement terminated." (d/e 7 p. 6).

The plain language of the venue clause negates this argument. The termination clause provides that "neither Party shall have any further obligation to the other except for any obligation accruing prior to the date of termination, . . . ." Plaintiff's causes of actions arise from obligations accrued before the Agreement's termination. The venue clause merely determines where the litigation over those obligations belongs. *See* <u>Advent Electronics, Inc. V. Samsung Semiconductor, Inc.</u>, 709 F.Supp. 843, 846 (N.D. Ill. 1989)("Termination of a contract does not divest parties of rights and duties already accrued. . . .")(rights that plaintiff sought to enforce accrued during life of agreement and thus were subject to forum selection clause).

The Louisiana Supreme Court case cited by Plaintiff does not dictate otherwise, even ignoring that Louisiana law does not apply. In <u>Sawicki v. K/S Stavanger Prince</u>, 802 So.2d 598 (2002), an admiralty case, the

Supreme Court of Louisiana held that a Louisiana statute limiting enforcement of forum selection clauses in employment contracts applied retroactively, because the statute was an expression of a strong state public policy. The Court recognized that the Supreme Court in Bremen upheld the validity of forum selection clauses, but concluded that the Louisiana statute evinced a strong public policy against such clauses. Sawicki, 802 So.2d at 602.

Plaintiff points to no such strong public policy against forum selection clauses in Illinois or Arizona, either statutory or judge-made. Thus, the Court has no occasion to consider whether such a policy should be applied retroactively. Whether the venue clause here is viewed as procedural or substantive is irrelevant.[6] The other cases cited by Plaintiff are equally inapplicable and do not even involve forum selection clauses. *See, e.g.,* Garcia v. Browning, 146 P.3d 1007 (Ariz. App. 2006)(applying criminal

---

[6]Defendant also correctly points out that Sawicki has been rejected by an Illinois appellate court in Foster Wheeler Energy Corp. v. LSP Equipment, LLC, 346 Ill.App.3d 753 (2d Dist. 2004). Plaintiff counters that the Agreement is covered by Arizona law, but does not set forth any Arizona law addressing the enforceability of venue clauses. The Court's own cursory research into Arizona law suggests forum clauses are valid. Bennett v. Appaloosa Horse Club, 35 P.3d 426, 431 (Ariz. App. 2001)("a forum selection clause is enforceable as long as it is not the result of unfair bargaining or so unreasonable that the plaintiff would be deprived of his or her day in court.") However, the Court has not researched Arizona law in any depth, since Plaintiff does not dispute Defendant's characterization of Arizona law, and because the Court believes transfer to Arizona is warranted under Section 1404(a) in any event.

statute amendment retroactively), *reversed by* Garcia, 151 P.3d 533 (Arizona S. Ct. 2007); Angus v. Medical Co. v. Digital Equipment Corp., 840 P.2d 1024 (Ariz. App. 1992)(computer software owner's breach of contract and tort claims accrued for limitations purposes when plaintiff should have known defendant was responsible for malfunctions); Broadnax v. Morrow, 326 Ill.App.3d 1074 (4th Dist. 2002)(policyholder's negligence action against insurers accrued when company denied claim).

 Plaintiff's next argument is that there is no court located in Scottsdale, Arizona with the authority to hear this case. According to Plaintiff, the only court in Scottsdale, Arizona is essentially a small claims court. (d/e 7, p. 8). Defendant does not dispute this. Plaintiff concludes that it is therefore impossible to enforce the forum selection clause.

 The venue clause does states that " . . . Scottsdale, Arizona, shall be the sole and exclusive venue for any . . . litigation . . . ." This wording, coupled with the fact that no court of competent jurisdiction is located in Scottsdale, arguably does provide an opening for Plaintiff's argument. Venue clauses should be "'clear and specific,'" IFC Credit Corp., 437 F.3d at 611 (discussing Illinois law).

However, Plaintiff's interpretation of the clause produces absurd results. Under Plaintiff's reading, the parties specifically contracted to litigate disputes nowhere. "Nonsensical interpretations of contracts, . . . are disfavored. [citations omitted]. Not because of a judicial aversion to nonsense as such, but because people are unlikely to make contracts, . . .that they believe will have absurd consequences." FutureSource LLC v. Reuters Ltd., 312 F.3d 281, 284 (7th Cir. 2002); *see also* Vijuk Equipment, Inc. v. Otto Hohner KG, 728 F.Supp. 1368, 1370 (N.D. Ill. 1990)(rejecting absurd interpretation of forum selection clause that would enable party to prevent any court from hearing dispute).

In the Court's opinion, the only reasonable reading of the venue clause is that litigation covered by it belongs in federal or state courts with a venue encompassing Scottsdale, Arizona.[7] Scottsdale is located in Maricopa County, which is part of the venue of the Phoenix Division of the U.S. District Court of Arizona. *See* www.azd.uscourts.gov.

---

[7]Defendant cites Claber v. Lowe's Companies, Inc., 1999 WL 166974 (N.D. Ill. 1999)(not reported in F.Supp.2d) in support of this conclusion. In Claber the clause provided for exclusive jurisdiction in courts within North Carolina, with venue in Wilkes County. The Claber Court transferred the case to the U.S. District Court for the Western District of North Carolina, which is not located in Wilkes County, but which encompasses Wilkes County as part of its venue.

Accordingly, the Court concludes the venue clause is valid and enforceable.[8] And, the venue clause applies to Plaintiff's claims here. Plaintiff's claims for breach of contract and action for declaratory judgment (Counts I and III) are clearly "litigation, . . . that may be brought, or arise out of, or in connection with or by reason of this Agreement."

As to the breach of fiduciary duty claim (Count II), Plaintiff does not dispute Defendant's contention that this claim arises from the Agreement as well. There is support in the law for that conclusion, as the claim appears based primarily on the same alleged misconduct and business relationship of the parties. *See* Kochert, 2007 WL 1839278 * 4 (fraudulent inducement claim subject to forum selection clause); Abbott Laboratories v. Takeda Pharmaceutical Co., 476 F.3d 421, (7th Cir. 2007)(breach of fiduciary duty claim based on duty imposed by Delaware law was subject to agreement's forum selection clause mandating Japan as forum). In the absence of contrary argument from the Plaintiff, the Court concludes the fiduciary claim falls within the venue clause. In any event, even assuming *arguendo* that the fiduciary claim is outside the venue clause's reach, the Court would still

---

[8]In any event, even assuming *arguendo* that the venue clause is impossible to enforce as Plaintiff contends, the Court would still recommend transfer of this case to Arizona under 28 U.S.C. § 1404(a).

recommend transfer of the claim with the rest of the case to Arizona under 28 U.S.C. § 1404(a).

## II. The Court recommends transfer to the United States District Court for Arizona, Phoenix Division, rather than dismissal.

Having concluded the venue clause is valid, enforceable, and applies to Plaintiff's claims, the Court must determine whether the case should be dismissed or transferred.

The Court believes transfer is the better choice. Dismissing the case would require Plaintiff to start over, which arguably only wastes time, and, in the Court's opinion, would be unfairly harsh. Transferring the case will preserve its progression thus far (which admittedly is not far, but is at least past filing and service). Further, Defendant has effectively conceded in this case that venue is proper in the U.S. District Court in Phoenix, thus estopping him from arguing otherwise once the case is transferred. Diversity jurisdiction will still exist on transfer–Plaintiff is a citizen of Illinois only and Defendant is a resident of Arizona.

There remains the question of which procedural rule should be invoked to effect the transfer. Defendant moves for transfer under 28 U.S.C. § 1406(a), which provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

The Court is not entirely certain that § 1406(a), which literally applies only to cases filed in the wrong district or venue, applies to cases removed to federal court from state court.  See McCloud Construction, Inc. v. Home Depot USA, Inc., 149 F.Supp.2d 695, 697 (E.D. Wis. 2001)(" . . . attorneys have had to invoke an assortment of rules and concepts that were not designed with forum selection clauses in mind . . .[discussing various routes used to enforce forum selection clauses]. . . § 1406(a) does not appear to be an appropriate vehicle to enforce a forum selection clause."). However, Plaintiff does not dispute that Section 1406(a) is appropriate, and some cases found by the court in its research support its application in removal cases.  See, e.g., Lashcon, Inc. v. Butler, 340 F.Supp.2d 932, 926 (C.D. Ill. 2004)(transferring removed case pursuant to 1404(a) and 1406(a)); Tom Raper Homes, Inc. v. Mowery & Youell, Ltd. 2007 WL 1035121 fn. 2 (S.D.Ind.,2007)(defendant removing case to federal court may still invoke 1406(a) to correct venue)(unpublished).  Accordingly, the Court accepts Defendant's contention that Section 1406(a) is one way to effect the transfer.

Transfer under 28 U.S.C. § 1404(a) is another way.  Section 1404(a) provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Though Defendant does not invoke § 1404(a), the Court may direct a § 1404(a) transfer on its own motion.  See Chukwu v. Air France, 218 F.Supp.2d 979, 990 (N.D. Ill. 2002)(exercising § 1404(a) authority to transfer *sua sponte*).

Transfer decisions under § 1404(a) are governed by federal law.  IFC Credit Corp., 437 F.3d 606, 608 (7th Cir. 2006).  The venue clause is given weight, its validity determined under federal law, but it is not automatically dispositive.  See IFC Credit Corp., 437 F.3d at 613.  A valid venue selection clause is viewed essentially as a waiver by the parties that the specified venue is inconvenient.  Id.,; Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1293 (7th Cir. 1989).  Inconvenience to third parties still factors in the 1404(a) analysis, as do the interests of justice.  IFC Credit Corp., 437 F.3d at 613 (Under § 1404(a), strong presumption in favor of forum selection clause can only be overcome "'if

there is inconvenience to some third party . . . or to the judicial system itself.'")(*quoted cite omitted*).

The Court believes the 1404(a) factors weigh in balance of transfer to Arizona. First, there is the venue selection clause, which is valid as discussed above. Second, the Agreement specifies Arizona law as controlling; a federal court in Arizona is more familiar with Arizona law. Third, the Agreement, executed in Arizona, provides that "a substantial portion of the duties and obligation of the Parties created hereunder are performable in Scottsdale, Arizona . . . ." Fourth, it appears that Plaintiff, as well as Defendant, both have significant contacts with Arizona. According to Boykins' affidavit, Plaintiff appears authorized to business in Arizona, and, at least during the relevant time period, operated a plant in Arizona. Last, transfer to Arizona would obviate any doubts about proper venue, as well as any concerns regarding personal jurisdiction over Defendant.

As to the convenience of potential witnesses, it is true that the record does not reveal the witnesses expected to be called, but Allen's Arizona residency and Plaintiff's closing of the Illinois plant do not support a conclusion that Illinois is the more convenient forum for witnesses.[9]

---

[9]As to the public interest factors relevant under § 1404(a), Judicial Caseload Profile statistics show that, for the 12-month period ending

In short, several other factors in addition to the venue clause point to Arizona.  The Court will therefore recommend transfer to the U.S. District Court of Arizona, Phoenix Division.  In light of this recommendation, the Court need not address the parties' arguments on personal jurisdiction.

WHEREFORE, the Court RECOMMENDS that Defendant's Motion to Dismiss be granted in part and denied in part (d/e 4).  The Court recommends that this case be transferred to the United States District Court of Arizona, Phoenix Division, pursuant to 28 U.S.C. § 1406(a), or, in the alternative, pursuant to 28 U.S.C. § 1404(a).  The Court recommends the motion to dismiss otherwise be denied.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1).  Failure to timely object will constitute a waiver of objections on appeal.

---

September 30, 2006, district of Arizona did have a more congested docket than this district, which weighs against transfer.  http://jnet.ao.dcn.  However, the median time from filing to disposition for civil cases is comparable, with Arizona at 11.8 months and Central Illinois at 8.7 months.  Additionally, as already discussed, the Arizona District Court has more familiarity with Arizona law.

<u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).

See also Local Rule 72.2.

    ENTER:    July 16, 2007

                                s/ Byron G. Cudmore
                           _____
                                BYRON G. CUDMORE
                           UNITED STATES MAGISTRATE JUDGE